KONSTANTINA LUKES *vs.* BOARD OF ELECTION
COMMISSIONERS OF WORCESTER & others.[1]

Suffolk. September 5, 1996. - November 26, 1996.

Present: WILKINS, C.J., ABRAMS, GREANEY, & FRIED, JJ.

*Municipal Corporations,* Home rule. *Elections,* Ballot. *Statute,* Construction.

General Laws c. 43B, § 17, requiring blank spaces for write-in votes to be provided on ballots, did not apply to a municipal election in a city governed by a home rule charter that did not require, for that particular election, that such blank spaces be provided. [828-830]

Where, under the home rule charter of the city of Worcester, a candidate must run for the office of mayor in the preliminary election in order to be eligible for the position of vice-chair of the city council, a candidate who had withdrawn her name from the ballot for mayor was eligible only for a city councillor position: in circumstances in which, under the charter, there was no candidate eligible to serve in the position of vice-chair after the final election was held, the position of vice-chair remained vacant. [830]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 14, 1995.

The case was reported by *Lynch,* J.

*Francis J. Cranston* for the plaintiff.

*David M. Moore,* City Solicitor, for the defendants.

ABRAMS, J. At issue is whether in a city election, G. L. c. 43B, § 17 (1994 ed.),[2] requiring blank spaces for write-in votes, applies to the final ballot under Worcester's home rule charter. The plaintiff, Konstantina Lukes, an elected council-

---

[1] The mayor and members of the city council of Worcester.

[2] The text of G. L. c. 43B, § 17 (1994 ed.), provides: "The provisions of chapters fifty to fifty-seven, inclusive, applicable to city or town elections shall apply to the proceedings governed by this chapter so far as apt, but the provisions of sections fifty-five to fifty-eight, inclusive, of chapter fifty-four shall not be deemed to apply, and the provisions of this chapter shall prevail where they are in conflict with any applicable provisions of said chapters fifty to fifty-seven, inclusive."

The statute requiring cities and towns to include blank spaces on their

lor at-large, brought this action in the nature of mandamus in the Supreme Judicial Court for Suffolk County (single justice session) against the board of election commissioners of Worcester (board) alleging that it erred in its determination that the office of vice-chair of the city council of Worcester was vacant after the 1995 election for mayor and city council. While the parties agree that the plaintiff received thirty-seven write-in votes for the office of mayor,[3] she asserts that under the Worcester city charter she is the duly elected vice-chair. The single justice stayed the election of a vice-chair and reserved and reported the case to this court. For the reasons stated in this opinion, we conclude that the board correctly determined that the office of vice-chair was unfilled after the 1995 election.

The facts of the case are undisputed. In 1985, the citizens of Worcester adopted a home rule charter, modifying their form of local government and establishing an electoral process for their local government officials.[4] The charter outlines a two-step process for the election of city councillors at-large and for mayor. The first step is a preliminary election which narrows the field of candidates for both councillor at-large and mayor down to a pool of twelve candidates. During this preliminary election, voters are provided with the opportunity to submit write-in votes for candidates not listed on the ballot. The second and final step is the final election which, according to the charter, is confined to the twelve candidates receiving the highest number of votes in the preliminary election.

All twelve candidates who survive the preliminary election are considered to be running for both mayor and councillor at-large, although they may withdraw from the mayoral race and run "solely for the office of councillor at large." Art. 2, § 2-2(b)(2) of the city charter of Worcester. The office of mayor is then awarded to the "candidate elected to the office of councillor at large [who] receiv[es] the highest number of votes for the office of mayor." Art. 2, § 2-2(b)(1). The office

---

ballots, G. L. c. 54, § 42 (1994 ed.), is thus applicable to entities governed by a home rule charter.

[3] Approximately 24,000 votes were cast in the election.

[4] See art. 2 of the Amendments to the Constitution of Massachusetts, as amended by art. 89.

of vice-chair is awarded to the "candidate elected to the office of councillor at large [who] receiv[es] the next highest number of votes for the office of mayor." *Id.*

The plaintiff was listed as one of the twelve candidates who survived the preliminary election for councillor at-large. In a timely manner, she sent a letter to the board which stated, "This letter is to inform you that I plan to run for the position of City Councillor-at-Large only, and not the position of Mayor in the upcoming November election."

Only three of the remaining twelve candidates maintained their eligibility for the office of mayor. At the election, two of these three candidates did not receive enough votes to be elected as a councillor at-large. The other candidate who did gain election to the city council also received the highest number of votes for mayor and was declared mayor.

As directed by the Secretary of the Commonwealth, see G. L. c. 43B, § 17 (1994 ed.), blank spaces were left on the ballot during the final election. The plaintiff received thirty-seven write-in votes for the office of mayor, despite her withdrawal from that race. No other candidate elected to the city council received more write-in votes for mayor. Based on those write-in votes and her election as a councillor at-large, Lukes claims that she is entitled to the office of vice-chair.

The thrust of the plaintiff's main argument is that State law requires that write-in ballots be counted. See G. L. c. 54, § 42 (1994 ed.).[5] Worcester's charter does not provide for write-in votes during the final election. Art. 7, § 7-5. The charter provides for a preliminary election during which the candidates for the final election are chosen. At the preliminary stage, voters are afforded the opportunity to write-in any eligible person that they choose. Art. 7, § 7-4(c)(2). The

---

[5]The relevant portion of G. L. c. 54, § 42, provides: "Under the designation of the office, the names of candidates for each municipal elective office shall, *except as city charters otherwise provide,* be arranged alphabetically according to their surnames, except that names of candidates for re-election to any such office of which they are the elected incumbents . . . shall be placed first on the ballot in alphabetical order according to their surnames, next and in like order the names of candidates of political parties as defined in chapter fifty, and the names of all other candidates shall follow in like order. . . . Blank spaces shall be left at the end of the list of candidates for each different office equal to the number to be elected thereto, in which the voter may insert the name and address of any person not printed on the ballot for whom he desires to vote for such office . . ." (emphasis added).

purpose of this preliminary election is to determine who the candidates will be in the final election. Art. 7, § 7-4(e). The winning candidates are the only candidates that are eligible for election on the final ballot.

"Our goal in interpreting two or more statutes relating to the same subject matter is to construe them so as to constitute an harmonious whole, consistent with the legislative purpose." *Independence Park, Inc.* v. *Board of Health of Barnstable,* 403 Mass. 477, 480 (1988). *Atkinson* v. *Ipswich,* 34 Mass. App. Ct. 663 (1993) (granting deference to city charter over statute).[6] "[W]here two provisions are in conflict, if a specific provision . . . is enacted subsequent to a more general rule, the specific and not the general provision applies." *Torres* v. *Fidelity & Guar. Life Ins. Co.,* 34 Mass. App. Ct. 376, 378 (1993), citing 2B Singer, Sutherland Statutory Construction § 51.02, at 121 (5th ed. 1992).

The board states that it only put write-in blanks on the ballot because, in its view, the Secretary of the Commonwealth required such blanks. The board's opinion was that blanks for write-in votes should not have been on their final ballot because it would be inconsistent with its charter. We agree with the board that State law requiring blank spaces on all ballots for write-in votes can be overridden by a home rule charter. The Legislature specifically has allowed cities and towns the right to change this aspect of the local election process by a home rule charter.

Worcester's charter does provide voters with an opportunity to select candidates not named on the ballot. That opportunity occurs in the preliminary election. Art. 7, § 7-4(e). The purpose of this preliminary election is to streamline the number of candidates, a legitimate State goal. See, e.g., *Bullock* v. *Carter,* 405 U.S. 134, 145 (1972). Worcester's preliminary election, with the opportunity for write-in votes, eliminates the practicality and necessity of putting blank spaces on the final local ballot. We conclude that,

---

[6]In *Atkinson* v. *Ipswich,* 34 Mass. App. Ct. 663 (1993), the provisions of G. L. c. 48, § 42 (1994 ed.), only applied if accepted by the community. The town charter was adopted five years after the town adopted the provisions of the law. The court concluded that the charter's provisions superseded those of the statute. Similarly, Worcester's charter supplants the statutory requirement of a blank space on the ballot because the language of the relevant statute only applies if a city's charter does not create a different process.

under the Worcester charter, there was no requirement to leave blank spaces for write-in votes on the final local ballot.

The plaintiff next argues that, although she withdrew her candidacy for the office of mayor, she never withdrew from becoming vice-chair through the electoral process. There is no merit to this argument. A reading of § 2-2(b) of the charter reveals that one must run for the office of mayor to be eligible for the position of vice-chair. In relevant part, the section maintains that all candidates for councillor at-large are eligible for the office of mayor, but at their own discretion, a "candidate duly nominated and seeking election solely for the office of councillor at large may withdraw his/her name from nomination to the office of mayor." Art. 2, § 2-2(b)(2). The wording of the charter states that, by withdrawing one's name from the ballot for mayor, the candidate is seeking election only to the councillor position. The plaintiff therefore made herself ineligible for the office of vice-chair through the electoral process.[7]

The matter is remanded to the single justice session where an order vacating the stay and judgment consistent with this opinion are to enter.

*So ordered.*

[7]The board faced with the same situation in 1989 declared the vice-chair position vacant. The city council then selected the vice-chair from among its members. The plaintiff, a member of the city council at that time, acquiesced to the appointment of a vice-chair by the city council despite the fact that some of the candidates had received write-in votes. Neither the electorate of Worcester nor the plaintiff has made any effort to change the charter after 1989. This precedent, however, did not preclude the plaintiff from making this challenge.