Wright, J.
This is a Dist/Mun. Cts. RAD.A, Rule 8A, appeal by respondent Helen Bolduc (“Bolduc”) of the denial of her motion to dismiss a G.L.c. 123, §7 petition for her commitment to McLean Hospital (“McLean”). The petition was filed in response to Ms. Bolduc’s G.L.c. 123, §11 three day notice of her intention to leave that mental health facility at which she had been retained on a conditional voluntary basis. The sole question raised by the motion to dismiss is whether Ms. Bolduc’s Health Care Proxy Agent ever had the authority to apply for the conditional voluntary hospital admission on Ms. Bolduc’s behalf.
The Rule 8A Expedited Appeal indicates that on September 15, 1998, Ms. Bolduc executed a G.L.c. 201D Health Care Proxy (the “Proxy”) which appointed her daughter, Amanda Diane Sansoucy (the “Agent”), as her Agent The Proxy expressly provided, in relevant part
My Health Care Agent is granted full power and authority to consent to any and all medical treatment which I may need in the event that I am unable to consent to such treatment on my own including without limitation authority to consent for medical care, hospitalization, nursing home admission, or whatever else may in my Health Care Agenfs sole judgment be in my best interest.... I further state to all the world that there are no limitations imposed upon my Health Care Agenfs authority.
In June, 2000, the then 76 year old Ms. Bolduc was a resident of the Forestview Nursing Home in Warren, Massachusetts. Her attending psychiatrist determined that she was suffering, inter alia, from increased paranoid and psychotic thought, auditory hallucinations and impaired judgment On June 30,2000, Ms. Bolduc was admitted to McLean pursuant to the emergency provisions of G.L.C. 123, §12 (b).
The determination by Ms. Bolduc’s attending psychiatrist that she “lack[ed] the capacity to make or communicate health care decisions” and his entry of those findings into her medical record activated the Agenfs authority under Ms. Bolduc’s Proxy. G.L.c. 201D, §6. On July 2, 2000, the Agent executed, on Ms. Bolduc’s behalf, an application for her conditional voluntary admission to McLean. The application was accepted.
Ms. Bolduc’s family thereafter filed a guardianship petition in the Middlesex Probate and Family Court. On July 25, 2000, that court appointed Amanda Diane Sansoucy and Christine B. Brungardt, Ms. Bolduc’s daughters, as her Temporary Guardians with the authority to monitor the administration of antipsychotic drugs. The court did not expressly authorize the Temporary Guardians to admit the ward to a mental health facility, see G.L.c. 201, §6, presumably because Ms. Bolduc was already a patient at McLean.
On August 7, 2000, Ms. Bolduc executed a written revocation of her Health *5 Care Proxy, which included a G.L.c. 123, §11 statement of her intent to leave McLean Hospital. On August 9, 2000, McLean filed the G.L.c. 123, §§7, 8 petition for commitment at issue on this appeal on the ground that Ms. Bolduc suffered from “Psychosis NOS.”[1] After hearing, the court entered a six month order of commitment The court also denied the respondent’s motion to dismiss, ruling that a valid health care proxy authorizes an agent to admit the principal to a mental health facility where, as here, the decision is made under an “activated” proxy and the proxy does not limit the agent’s authority to do so.
1. Both the order of civil commitment and the issues argued on this appeal of the denial of the motion to dismiss the commitment petition are now moot Ms. Bolduc is no longer subject to the commitment order in question as she was discharged from McLean Hospital prior to oral argument in this case. “[Ljitigation is considered moot when the party who claimed to be aggrieved ceases to have a personal stake in its outcome.” Globe Newspaper Co. v. Chief Medical Examiner, 404 Mass. 132, 134 (1989), quoting from Blake v. Massachusetts Parole Board, 369 Mass. 701, 703 (1976).
2. The principal concerns underlying Ms. Bolduc’s challenge of her Health Care Proxy Agent’s authority to apply for her conditional voluntary admission to McLean have also, as a practical matter, been eliminated.
Relying on Doe v. Doe, 377 Mass. 272 (1979), the respondent has argued that the Agent’s submission of a conditional voluntary admission application, without the assent of the respondent who lacked the requisite capacity at the time, effectively constituted an involuntary commitment of the respondent for an indefinite period of time to a mental health facility without due process of law. See Id. at 281 (involuntary admission of ward by guardian treated as commitment because the former entailed the “same loss of freedom and the same label of mental illness as commitment under c. 123”). The respondent correctly states that in the context of actual involuntary commitments, due process requires a judicial determination, after hearing, that the petitioner has satisfied its burden of proving beyond a reasonable doubt, D.L. v. Commissioner of Social Serv., 412 Mass. 558, 564 n.11 (1992); Superintendent of Worcester State Hosp. v. Hagberg, 374 Mass. 271, 276 (1978), that the respondent is mentally ill and that her discharge from the facility would “create a likelihood of serious harm.” G.L.c. 123, §8.
Ms. Bolduc’s “indefinite commitment” lasted, however, only until she expressed her desire to leave the facility.[2] At that point, McLean Hospital promptly, as mandated by G.L.c. 123, §11, petitioned the court for Ms. Bolduc’s G.L.c. 123, §§7,8 commitment and obtained an order therefor.[3] Thus, at the present juncture, Ms. Bolduc *6 has already had both a full evidentiary hearing and a judicial finding that at the time in question, she suffered from mental illness and there was a likelihood that serious harm would have resulted from her release from the Hospital. As noted, she has also since been discharged. Therefore, the due process considerations argued on this appeal are, at least with respect to Ms. Bolduc, moot
3. While “[t]he general rule is that courts ordinarily will not decide moot questions,” Singer Friedlander Corp. v. State Lottery Comm’n, 423 Mass. 562, 563 (1996), quoting from Norwood Hosp. v. Munoz, 409 Mass. 116, 121 (1991), it remains within their discretion to do so “where the question is one of public importance, is very likely to arise again in similar circumstances, and where appellate review could not be obtained before the question would again be moot” Attorney General v. Commissioner of Ins., 403 Mass. 370, 380 (1988). It is settled that “issues involving the commitment and treatment of mentally ill persons are generally considered matters of public importance ... [and] are classic examples of issues that are ‘capable of repetition, yet evading review.’” Acting Super. of Bournewood Hosp. v. Baker, 431 Mass. 101, 103 (2000), quoting from Hashimi v. Kalil, 388 Mass. 607, 609 (1983). For these reasons, and because both parties have briefed and argued the issue, see Commonwealth v. Taylor, 428 Mass. 623, 624 (1999), we turn to the question of Ms. Bolduc’s Health Care Proxy Agents authority to admit her to a mental health facility.[4]
Such authority would appear to be implicit in G.L.c. 201D, the statutory scheme for health care proxies in this Commonwealth. Section 5 of G.L.c. 201D provides that “[a]n agent shall have the authority to make any and all health care decisions on the principal’s behalf that the principal could make,... subject... to any express limitations in the health care proxy [emphasis supplied].” Section 1 of G.L.c. 201D defines “health care” as “any treatment, service or procedure to diagnose or treat the physical or mental condition of a patient [emphasis supplied].” No provision of G.L.c. 201D restricts an agent’s options as to the diagnosis or treatment of the principal’s mental condition to outpatient care. Nor did Ms. Bolduc’s Proxy place such a restriction, or indeed any limitation, on the Agent’s authority in malting health care decisions. The Proxy in fact specifically authorized the Agent to consent to the hospitalization of Ms. Bolduc. And it is clear that mental health hospitals or facilities are included under G.L.c. 201D. Section 1 of the statute defines “facility” as any facility listed in G.L.c. Ill, §70E. The latter statute covers, inter alia, “any private, county or municipal facility, department or ward which is licensed ... by the department of mental health pursuant to section nineteen of chapter nineteen, ... [and] any ‘facility* as defined in section one of chapter one hundred and twenty-three....”
G.L.c. 201D does not specifically address mental health commitments, much less voluntary and conditional voluntary admissions to mental health facilities. The requirements for such admissions are instead set forth in G.L.c. 123, §10 and 104 CMR 27.06. With respect to an adult, an application for a voluntary or conditional voluntary admission to a mental health hospital can only he made either by an individual over the age of 16 who is competent to apply for such admission sta *7 tus, or by a guardian with specific authority to do so.[5] There is nothing in the record to suggest that Ms. Bolduc was competent at the time of her conditional voluntary admission to McLean, or that she participated in any way in that decision.[6] The conclusions of her attending psychiatrist were clearly to the contrary. Nor did her Proxy Agent serve as her guardian at that point
It is unnecessary, however, to construe G.L.c. 123, §10 as imposing a limitation on a health care proxy agents authority which the Legislature did not choose to create in G.L.c. 201D. While statutes must be interpreted to “constitute a harmonious whole consistent with the legislative purpose,” Police Dept. of Boston v. Fedorchuk, 48 Mass. App. Ct. 543, 547 (2000), quoting from Lukes v. Election Commrs. of Worcester, 423 Mass. 826, 829 (1996), “we cannot read into a statute a provision which simply is not there.” Boulter-Hedley v. Boulter, 429 Mass. 808, 811 (1999). The Legislature could have restricted a health care proxy agenfs discretion in exactly the same manner it restricted a guardian’s authority under G.L.c. 201, §6. It did not do so. Instead, the Legislature clothed the proxy agent with the authority to make any and all decisions that the principal could make and mandated that
[a] health care provider shall comply with health care decisions made by an agent under a health care proxy to the same extent as if such decisions have been made by the principal, subject to any limitations in the health care proxy, or in any specific court order.
G.L.c. 201D, §5. In the circumstances of this case, McLean properly treated the Proxy Agent’s application for the conditional voluntary admission of Ms. Bolduc as though it had been filed by Ms. Bolduc herself.
Appeal dismissed.
So ordered.

 Tracking the specific language of 104 CMR 27.05(1) defining mental illness, McLean’s petition described “psychoses NOS” as a “substantial disorder of thought, mood, perception, orientation and memory which grossly impairs judgment, behavior, capacity to recognize reality and ability to meet the ordinary demands of life.”

 Ms. Bolduc’s Proxy revocation consisted of two sentences, the second of which stated: “I desire to leave the hospital.” McLean properly treated that statement as a G.L.c. 123, §11 three day notice of termination of her conditional voluntary admission status. Section 27.06(5) of 104 CMR provides, in pertinent part “The form and content of such three day notice shall be deemed sufficient so long as it conveys the patients intention, without requirement that it be on any particular form of the facility.”

 It is essential to note that but for the Proxy Agents filing of a conditional voluntary admission application, McLean would have been required either to release Ms. Bolduc within 10 days other original G.L.c. 123, §12(b) emergency admission, or to petition the court for her §§7, 8 involuntary commitment See G.L.c. 123, §12 (d). The action of the Agent thus postponed the realization of Ms. Bolduc’s due process rights, at least until that point in time at which Ms. Bolduc revoked the Proxy and signaled her intent to leave the facility.

 McLean Hospital mistakenly argues that the question of the Proxy Agent’s authority is not “capable of repetition” because Ms. Bolduc revoked her Proxy and must be deemed to lack the capacity to execute a second Proxy given the guardianship order of the Middlesex Probate and Family Court The “capable of repetition” standard is not however, limited to the circumstances of the individual case at bar. It is not “indispensable that the case be capable of repetition in respect only to the particular claimant This doctrine is designed to assist in the clarification of the law generally and not simply to assist the situation of a particular party” Mendonza v. Commonwealth, 423 Mass. 771, 777 (1996).

 A guardian cannot admit a ward to a mental health institution without a specific court order. Section 6(b) of G.L. c. 201 states: “No guardian so appointed shall have the authority to cause to admit or commit such person to a mental health facility unless the court specifically finds the same to be in the best interests of such person and specifically so authorizes such admission or commitment by its order or decree. The court shall not authorize such admission or commitment except after a hearing for the purposes of which counsel shall be provided for any indigent, allegedly mentally ill person.”

 For purposes of a conditional voluntary admission, a patient is competent if he or she “understands that he or she is in a facility for treatment, understands the three-day notice provisions, and understands the facility director’s right to file a petition for commitment and thereby retain him or her at the facility.” 104 CMR 27.06(1)(d)(2).