WEYMOUTH M. ATKINSON, JR., & others[1] *vs.* TOWN OF
IPSWICH.

No. 92-P-1085.

Essex. May 14, 1993. - June 25, 1993.

Present: BROWN, KASS, & LAURENCE, JJ.

*Municipal Corporations*, Fire department, Charter, Town manager. *Ipswich. Statute*, Construction.

The town manager of Ipswich has the authority under the town charter to
appoint the fire chief and subordinate personnel and to organize, reor-
ganize, and administer the town's fire department. [664-667]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 21, 1991.

The case was heard by *John T. Ronan*, J., on motions for
summary judgment.

*Peter M. Ross* for the plaintiffs.
*Charles C. Dalton* for the defendant.

KASS, J. As presented in the briefs and oral argument of
the parties, the controversy is about whether the town man-
ager or the fire chief is top dog of the Ipswich fire depart-
ment.[2] Sixteen inhabitants of the town who identify them-
selves as firemen or call firemen[3] filed a complaint asking a
declaration under G. L. c. 231A, § 1, that the fire depart-
ment is under the control of the fire chief pursuant to G. L.
c. 48, § 42, the "strong" fire chief law. See *Labor Relations*

---

[1]Fifteen taxpayers of the town of Ipswich who are also fire fighters.
[2]It requires an imaginative reading of the complaint to understand that
there is a controversy and what it is about. We accept the statement of the
parties in their respective briefs about the nature of the controversy.
[3]Call fire fighters respond to fire alarms from their homes or places of
employment. See *Morse* v. *Selectmen of Ashland*, 7 Mass. App. Ct. 739,
744 n.7 (1979).

*Commn.* v. *Natick,* 369 Mass. 431, 432 (1976). A judge of the Superior Court, who heard the matter on the town's motion for summary judgment, declared that the Ipswich town charter supplanted the application of G. L. c. 48, § 42, "in the event of any conflict between these two legal authorities."[4] The plaintiff fire fighters have appealed. We affirm.

In 1962, the Ipswich town meeting voted to accept the provisions of G. L. c. 48, § 42, which places in the hands of a fire chief, appointed by the selectmen of a town, plenary authority to administer its fire department, including the power to appoint a deputy chief, officers, and firemen; purchase apparatus; and make rules and regulations for operation of the department.[5] Five years later, in 1967, the town adopted a new charter by accepting St. 1966, c. 620, entitled "An Act establishing a selectmen-town manager form of government for the town of Ipswich."

Section 11(a) of the charter[6] confers upon the town manager general powers to "supervise and direct the administration of all departments, boards and offices subject to his appointment." Section 11(b) provides that the town manager, unless expressly prohibited by the General Laws so to do, "may reorganize, consolidate or abolish departments, commissions, boards or offices under his direction and supervision." In the case of both of these subsections, the qualifying phrases "subject to his appointment" and "under his direction and supervision" produce transitory tail-chasing because whether the fire department and its chief are subject to the

---

[4]After having so declared, the judge entered a judgment dismissing the complaint. When a court reaches the merits on a complaint for declaratory judgment, the judgment should declare the rights of the parties rather than dismiss the complaint. *Gennari* v. *Revere,* 23 Mass. App. Ct. 979, 980 (1987). This is so even when the case is decided on a motion for summary judgment. *146 Dundas Corp.* v. *Chemical Bank,* 400 Mass. 588, 589 n.4 (1987).

[5]General Laws c. 48, § 42, is one of that category of statutes relating to cities and towns which applies in a municipality only when the legislative body of the municipality has accepted the provisions of the statute.

[6]Sections of the town charter except, in an instance not here relevant, correspond with St. 1966, c. 620. For example, the text of § 11(a) of the charter appears in St. 1966, c. 620, § 11(*a*).

manager's direction is precisely the question at hand. The way out of the circle appears in § 11(l) of the charter, which provides: "The town manager shall appoint all necessary town officers not specifically provided for herein." As the charter makes no specific provision for appointment of the fire chief and as the fire chief of a town is an "officer" of the town, see *Warner* v. *Selectmen of Amherst*, 326 Mass. 435, 437 (1950), it follows that the manager has the power to appoint the fire chief and other fire department personnel.

Power to appoint certain town officials, viz., election officers, registrars of voters, trust fund commissioners, the town accountant, the members of the zoning board of appeals, the electric light manager, the town manager, and the treasurer-collector is placed by the charter with the selectmen. Charter § 3. Sections 13, 14, 15, 16, 17, 18, and 21 of the charter confer specific appointment and management powers upon the town manager, but those powers do not limit the plenary power conferred by § 11(a) and by § 11(l), which vests in the manager appointment powers "not specifically provided for herein."

The nagging doubt remains, and the fire fighters press it, whether the failure to mention the fire department taken in conjunction with the existence of the "strong" chief statute, G. L. c. 48, § 42, should lead to the conclusion that the relatively independent department contemplated by § 42 was meant to survive the adoption of a new charter by Ipswich. We think that doubt is resolved in favor of the town manager by charter § 30, which repeals all laws inconsistent with provisions of the new charter.[7] The powers conferred by the charter upon the town manager to direct, supervise, and restructure all departments and to appoint to all necessary departments conflicts with G. L. c. 48, § 42, which confers

---

[7]Charter § 30 provides: "All laws, by-laws, rules and regulations in force in the town of Ipswich when this act takes effect, not inconsistent with its provisions, whether enacted by authority of the town or any other authority, shall continue in full force and effect until otherwise provided by law, by-law or vote, respectively; all other laws, by-laws, rules and regulations, so far as they refer to the town of Ipswich, are hereby repealed and annulled, but such repeal shall not revive any preexisting enactment."

upon the fire chief the power to "control" the fire depart-
ment, to appoint junior officers and firemen, and to adminis-
ter the department. See *Hayden* v. *West Springfield*, 22
Mass. App. Ct. 902, 904 (1986).

We are reinforced in our conclusion by the uncontested
facts that, since the advent of the charter in April, 1967, the
town manager has made all the appointments to the fire de-
partment (including chief) and has exercised plenary supervi-
sion of that department. The town in this case is much like
an administrative agency, to whose reasonable and consistent
interpretation of statutes pertaining to that agency we grant
deference. See *Boston Neighborhood Taxi Assn.* v. *Depart-
ment of Pub. Util.*, 410 Mass. 686, 692 (1991); *Board of
Educ.* v. *School Comm. of Quincy*, 415 Mass. 240, 244
(1993); *International Bhd. of Elec. Wkrs.* v. *Western Mass.
Elec. Co.*, 15 Mass. App. Ct. 25, 28 (1982). To this we may
add that a view of the interrelation of the "strong" fire chief
statute and the charter in which the charter is dominant
comports with the purpose of the city or town manager form
of governance. That purpose is to concentrate administrative
authority and responsibility in a professional manager, to the
end of efficient and economic administration of municipal af-
fairs. See *Williams* v. *City Manager of Haverhill*, 330 Mass.
14, 17-19 (1953); 2 McQuillin, Municipal Corporations
§ 9.21 (3d rev. ed. 1988).

In 1987, an article on the warrant of the annual town
meeting to revoke acceptance of G. L. c. 48, § 42, was de-
feated. The fire fighters urge this as emblematic of a legisla-
tive will in Ipswich to adhere to the dominance of the fire
department by its chief. While express disengagement by
Ipswich from § 42 would surely have simplified the exercise
in interpretation which we have just performed, it would not
have altered the meaning of the charter when adopted in
1967. Weight is seldom ascribed to the failure by a legisla-
tive body to adopt a measure placed before it for considera-
tion. See *Franklin* v. *Albert*, 381 Mass. 611, 615-616 (1980).
The reason could be, for example, that the legislative body
did not think the measure necessary, a cogent enough reason

in this case in the light of twenty years of practice by the town and the town manager.

The judgment of dismissal is vacated and a new judgment is to enter declaring that the town manager of Ipswich has the authority to appoint the fire chief and subordinate personnel and to organize, reorganize, and administer the fire department of Ipswich.

*So ordered.*