NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

21-P-1109                                    Appeals Court

     MARK TETREAULT  vs.  BOARD OF SELECTMEN OF LYNNFIELD.

                    No.  21-P-1109.

     Essex.      November 30, 2022. – February 24, 2023.

          Present:  Neyman, Desmond, & Grant, JJ.


Municipal Corporations, Fire department, Charter, By-laws and
     ordinances.  Contract, Employment.  Public Employment.
     Fire Fighter, Appointment.  Practice, Civil, Summary
     judgment, Declaratory proceeding.  Statute, Construction.




     Civil action commenced in the Superior Court Department on
August 6, 2018.

     The case was heard by C. William Barrett, J., on motions
for summary judgment.


     Devin R. McDonough for the defendant.
     Andrew J. Gambaccini for the plaintiff.


     GRANT, J.  The plaintiff, Mark Tetreault, maintains that

when he signed an employment contract as fire chief of the town

of Lynnfield (town), he believed that he would be granted a

lifetime appointment by G. L. c. 48, § 42, colloquially known as

the "strong chief" statute.  That employment contract provided

that it was terminable at the end of its term by either party on proper notice.  After the town gave him notice of its intent not to renew his contract at the end of his fifth year as fire chief, Tetreault sued the town seeking declaratory relief.  Ruling on cross motions for summary judgment, a judge allowed Tetreault's motion and denied the town's motion.  The judge ordered and declared that the town's board of selectmen (board) violated the strong chief statute, the town charter, and the personnel bylaws of the town's municipal code by removing Tetreault as chief without a hearing and the establishment of cause.  Because what happened was a nonrenewal of Tetreault's contract as permitted by its terms and not a removal from office within the meaning of the strong chief statute, we reverse.

Background.  In reviewing a grant of summary judgment, we recite the facts in the light most favorable to the town, the nonmoving party against which summary judgment was entered.  See Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991).  See also Flint v. Boston, 94 Mass. App. Ct. 298, 303 (2018).  We derive the facts from the summary judgment record, including the statements of those facts that the parties have agreed are undisputed.

1.  Lynnfield's government and fire department.  In establishing a fire department, a town may choose from a variety of administrative models set forth in local option statutes.

See, e.g., G. L. c. 48, §§ 42, 42A, 58.  In 1922, the town voted to accept one such statute, the predecessor law to the strong chief statute.  See St. 1920, c. 591, § 27, now codified at G. L. c. 48, § 42.  The strong chief statute and its counterpart, the so-called "weak chief" statute, establish the most common models for fire departments in Massachusetts.  As the name implies, strong chiefs have "full and absolute authority" to administer fire departments established under their control.  G. L. c. 48, § 42.  Among other duties, strong chiefs appoint deputy chiefs, officers, and firefighters; set the compensation of the permanent and call members of the department subject to the approval of the board of selectmen; and make all rules and regulations for the operation of the department.  See Atkinson v. Ipswich, 34 Mass. App. Ct. 663, 664 (1993).  The town codified the duties of its strong chief in its municipal code.  See Lynnfield Municipal Code § 335-3.  Under the strong chief statute, the chief "may be removed for cause by the selectmen at any time after a hearing."  G. L. c. 48, § 42. Strong chiefs in turn "may remove [appointed subordinates] at any time for cause and after a hearing."[1]  Id.

---

[1] The subordinate members of the town's fire department are unionized, but the collective bargaining agreement does not grant them tenure.  The provisions of the civil service system, G. L. c. 31, do not apply to the town's fire department.

In towns that have accepted the weak chief model, the selectmen establish the fire department, appoint the chief and the officers and firefighters, fix their salaries, and make the regulations governing the department. See G. L. c. 48, § 42A, inserted by St. 1973, c. 1048, § 2. In a town using the weak chief model that is not subject to the civil service statute, G. L. c. 31, the weak chief serves "at [the] pleasure" of the selectmen, G. L. c. 48, § 42A, who need not show cause before removing the weak chief.

As the town and Tetreault did here, and as discussed in more detail below, a municipality may also enter into a contract that sets "the salary, fringe benefits, and other conditions of employment, including but not limited to, severance pay [and] . . . conditions of discipline, termination, dismissal, and reappointment . . . for its . . . fire chief." G. L. c. 41, § 108O, as amended by St. 2000, c. 423, §§ 1, 2.

In addition, the town's charter provides certain protections to employees, including the fire chief. Section 5-1(b) of the charter states that the board may appoint certain town officers, including the fire chief, "for indefinite terms." See Atkinson, 34 Mass. App. Ct. at 665 (fire chief is town officer). Section 5-5-1 of the charter permits the board "to rescind, for cause, any appointment" to office, so long as the board gives written notice to the appointee of the board's

intention, the reasons for the proposed removal, and the right to be heard at a public hearing, if requested.

Similarly, the town's personnel bylaws provide protections to employees, including the fire chief.  See Lynnfield Personnel Bylaws § 62-3.  Employees may not be "discharge[d]" without written notice of the proposed reasons for the discharge, "a[n] explanation of the evidence upon which the charges are based," and an opportunity to rebut the charges.  Lynnfield Personnel Bylaws § 62-57(B).

2.  <u>Tetreault's employment</u>.  In December 2013, the board appointed Tetreault as the town's fire chief "subject to the successful negotiation of an employment contract."  During those negotiations, in discussing the contract provision that he serve as an employee at will during an initial six-month probationary period, Tetreault told the town administrator that it was his understanding that under the strong chief statute, a chief "only could be terminated for cause."  Tetreault asked to include in the contract language that provided that "[n]othing in this agreement shall diminish the authority, duty, and protections granted under [G. L. c. 48, § 42]," and that the contract was "in accordance with [G. L. c. 41, § 108O]."[2]  The town

---

[2] The contract was based on a template available online through the fire chiefs associations of New Hampshire and Massachusetts.  Tetreault did not have an attorney review the contract.

administrator declined to do so, and no reference to either statute was included in the contract.

The negotiations culminated in a contract between Tetreault and the town dated January 16, 2014. Paragraph 12.B of the contract provided that after the initial six-month probationary period, Tetreault "may be disciplined or discharged only for just cause, upon proper notice and only after a hearing." Paragraph 18 of the contract provided that its term was initially for three years, until December 31, 2016, at which point the contract automatically self-renewed for one-year periods "[u]nless either party provide[d] written notice to the other of its intention to renegotiate and/or not to renew this contract no less than six (6) months prior to the end of its initial or any extended terms."

As the town's fire chief, Tetreault successfully completed the probationary period and the initial three-year term, after which the employment contract self-renewed for two one-year periods. For over four years, the board never disciplined Tetreault, nor informed him that his conduct gave it cause for his removal.

In June 2018, the board voted "not to renew" Tetreault's contract beyond December 31, 2018. By letter dated June 26, 2018, the board gave notice to Tetreault, consistent with paragraph 18.B of his contract, of its intent "not to renew" his

contract.  The board gave no reason for its decision and refused to provide Tetreault with a hearing on the matter.

In August 2018, Tetreault filed a wrongful termination action in the Superior Court, seeking injunctive relief preventing the town from removing him as fire chief and a judgment declaring that the strong chief statute, the town charter, and his employment contract provided that he shall remain fire chief unless removed for cause.  See G. L. c. 231A, §§ 1, 2.  A motion judge denied Tetreault's request for injunctive relief; Tetreault did not appeal that ruling, and that claim is not before us.  The town subsequently paid Tetreault three months' salary as severance pay as required by the contract,[3] and in January 2019 he began working as fire chief of a town in New Hampshire.

Another Superior Court judge granted summary judgment declaring that the town violated the strong chief statute, as well as its own charter and bylaws, by removing Tetreault as fire chief without first providing him with a hearing and showing cause for the removal.[4]  From the language of the strong

---

[3] Paragraph 18.C of the contract provided:  "In the event the [chief] is not reappointed . . . , the [town] agrees to pay the [chief], as liquidated damages, a lump sum severance payment equal to (3) months' salary."

[4] Near the very end of Tetreault's contract term, on December 20, 2018, the town placed him on administrative leave pending an investigation into an unrelated incident.  In its

chief statute that a chief "may be removed for cause by the [board] at any time after a hearing," G. L. c. 48, § 42, the judge concluded that it was "plain and unambiguous" that Tetreault was entitled to a hearing "prior to termination." The town appealed.

Discussion. 1. Standard of review. We review de novo the order granting summary judgment. See City Council of Springfield v. Mayor of Springfield, 489 Mass. 184, 187 (2022). No material fact is in dispute, and both parties agree that the appeal turns on the construction of the strong chief statute, the town charter and bylaws, and Tetreault's employment contract. Interpretation of each of those sources is a question of law.

2. The strong chief statute. "Statutory interpretation is a question of law for the court."[5] Boston Police Patrolmen's

---

brief, the town argued that the incident amounted to just cause to terminate Tetreault, thereby mooting this appeal. At oral argument the town abandoned that argument, and we do not reach it.

[5] To the extent that Tetreault bases his claim on affidavits of two retired fire chiefs as to their understanding of the meaning of the strong chief statute and G. L. c. 41, § 108O, those affidavits are not evidence of legislative intent. See McKenney v. Commission on Judicial Conduct, 377 Mass. 790, 799 (1979), S.C., 380 Mass. 263 (1980) ("postenactment, private views of citizens supporting legislation are not relevant legislative history"). See also Administrative Justice of the Hous. Court Dep't v. Commissioner of Admin., 391 Mass. 198, 204-205 (1984) (declining to consider as legislative history statements of legislators which plaintiff asserted showed their punitive motive to deny him tenure).

Ass'n v. Boston, 435 Mass. 718, 719 (2002). In interpreting a statute, our primary goal is "to effectuate the intent of the Legislature in enacting it" (citation omitted). Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 744 (2010). "[T]he plain language of the statute" is the "principal source of insight into legislative intent" (quotations and citation omitted). HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 332 (2022). "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent" (citation omitted). City Council of Springfield, 489 Mass. at 187. However, where the statutory language is not clear, "familiar principles of statutory construction guide our interpretation" (citation omitted). Patel v. 7-Eleven, Inc., 489 Mass. 356, 362 (2022). See Boston Police Patrolmen's Ass'n, supra at 720 (court may consider "cause of [statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" [quotation and citation omitted]). An overarching principle of statutory construction requires courts to "take into account the interrelationship of different statutes," with the goal of harmonizing other statutes so that they do not "undercut each other" (citation omitted). Ryan v. Mary Ann Morse Healthcare Corp., 483 Mass. 612, 620 (2019).

a.  Language of the strong chief statute.  The strong chief statute states:  "[The fire chief] may be removed for cause by the selectmen at any time after a hearing."  G. L. c. 48, § 42. Tetreault reads that sentence to grant him a lifetime appointment, and argues that by removing him without a hearing and a finding of cause, the town violated the statute.  He contends that any provisions of his contract that conflicted with that grant of a lifetime appointment were "impermissible" and "unenforceable."

Under the language of the strong chief statute, G. L. c. 48, § 42, Tetreault was entitled to a hearing and a demonstration of cause if he was "removed" from the position of fire chief.  The word "remove" is not defined in the strong chief statute.  In the employment context, that word ordinarily connotes a forced dismissal or termination.  See Webster's Third New International Dictionary 1921 (2002) (to remove means "to force (one) to leave a place or to go away:  as . . . to dismiss from office").  See generally 4 E. McQuillin, Municipal Corporations § 12:321, at 663 (2019) ("failure to reappoint an officer upon the expiration of a definite term, and the selection of another to fill the office does not constitute a removal from office").  Here, Tetreault was not removed from his position while the contract was in effect, but rather given notice in accordance with his contract more than six months

before the end of its term that the board would not renew it. See Dooling v. Fire Comm'r of Malden, 309 Mass. 156, 160-161 (1941) (fire commissioner's abolishment of fire chief position pursuant to St. 1892, c. 182 was not removal of chief from office under G. L. c. 48, § 58). Courts interpreting other sections of the General Laws have distinguished nonrenewals of contracts from removals and dismissals.[6] Tetreault's employment came to a natural end under the terms of the mutually agreed-upon contract after the board voted not to renew his contract. We conclude that the board did not remove Tetreault within the meaning of the statute, and therefore no statutory violation occurred.

Trying to find support for his claim that the strong chief statute granted him a lifetime appointment, Tetreault points to its last sentence, which states: "The appointment of the chief of the fire department in any town or district having a population of five thousand or less may be for a period of three years." G. L. c. 48, § 42, as amended through St. 1981, c. 322.

_____

[6] See, e.g., Massachusetts Coalition of Police, Local 165, AFL-CIO v. Northborough, 416 Mass. 252, 255 (1993) (selectmen's "failure to reappoint [police officer] is not a 'removal' . . . and therefore a failure to reappoint a police officer . . . does not require a hearing and determination concerning just cause to remove"); Downing v. Lowell, 50 Mass. App. Ct. 779, 782-783 (2001) (statutory safeguards available to school principals in event of dismissal not available where "contract simply expire[s]. . . . A dismissal is not the same as a nonrenewal of a contract").

That language does not apply to Lynnfield, the population of which has exceeded five thousand at all relevant times.  But from it Tetreault argues that, by permitting appointment of a small-town fire chief for a three-year term, the Legislature must have intended for larger towns' strong chiefs to have no limit on their terms of office.  We are not persuaded.  That sentence states that small towns "may" appoint fire chiefs for three-year terms, and does not have a mandatory effect, even as to small-town chiefs.  See Shea v. Selectmen of Ware, 34 Mass. App. Ct. 333, 335-336 (1993) ("'may' is not an apt word to express a positive mandate . . . [and] [t]he use of the word . . . imports the existence of discretion" [quotation and citation omitted]).  Beyond that, it says nothing about the term of a chief in a larger town.  See Beach Assocs., Inc. v. Fauser, 9 Mass. App. Ct. 386, 389-390 (1980) (courts "construe permissive language of a statute as mandatory only if it appears that the Legislature intended such an interpretation").

Besides looking at the wording of the strong chief statute, we note what it does not say.  The word "tenure," or similar words that would import lifetime appointment, do not appear in the strong chief statute, which focuses primarily on the authority and duties of a strong fire chief.  We are not at liberty to "add words to a statute that the Legislature did not put there, either by inadvertent omission or by design."  Thomas

v. Department of State Police, 61 Mass. App. Ct. 747, 753
(2004), quoting Commonwealth v. McLeod, 437 Mass. 286, 294
(2002).  See Harrison v. Massachusetts Bay Transp. Auth., 101
Mass. App. Ct. 659, 670 (2022).  Had the Legislature intended
for the strong chief statute to bestow lifetime appointments on
fire chiefs, "[s]o important a matter would [not] have been
passed over in silence."  Thomas, supra at 754, quoting Opinion
of the Justices, 308 Mass. 601, 613 (1941).  Courts will not
read a promise of lifetime employment into a statute or contract
"without the strong proof and explicit expressions of intent
usually required to show such appointment."  Parker v. North
Brookfield, 68 Mass. App. Ct. 235, 239 (2007).  "[A] lifetime
contract [of employment] is so extraordinary that it takes
strong proof to establish one . . . [and] particularly explicit
expressions of intent are required to bind an employer to an
employment contract of extraordinary duration."  O'Brien v.
Analog Devices, Inc., 34 Mass. App. Ct. 905, 906-907 (1993).

Tetreault argues that the strong chief statute must be read
in conjunction with G. L. c. 41, § 108O, which provides that a
town may enter into an employment contract that provides a fire
chief with benefits greater than those provided to other town
employees pursuant to local bylaws or ordinances.  Section 108O
specifically states that such an employment contract may set
"conditions of . . . reappointment" for the fire chief, and that

"[n]othing contained in this section shall grant tenure to such [fire chief]."  Thus, § 108O does not affect our interpretation of the language of Tetreault's contract permitting the town "not to renew" the contract as meaning something different from "remov[al] for cause" in the strong chief statute, G. L. c. 48, § 42.

b.  Related statutes.  In construing the strong chief statute, we also look to related statutes.  Where possible, we must harmonize statutes "to give rise to a consistent body of law."  Charland v. Muzi Motors, Inc., 417 Mass. 580, 583 (1994).

First, we make note of the weak chief statute, G. L. c. 48, § 42A.  As mentioned above, that statute provides that in a town that has accepted it and that is not subject to the civil service statute, the weak chief serves "at [the] pleasure" of the selectmen.  Contrary to Tetreault's argument, that language in the weak chief statute does not require us to interpret the strong chief statute to confer a lifetime appointment.  See Camargo's Case, 479 Mass. 492, 499-501 (2018) (definition of "employee" in independent contractor statute did not apply to worker's compensation statute, where statutes serve "different, albeit related, purposes").  See also 2B N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 51.3 (7th ed. 2012) (similarly construing statutes that relate to same class of persons).

Second, in interpreting the strong chief statute, we consider G. L. c. 48, § 58, inserted by St. 1916, c. 291.  It provides that in towns accepting its provisions, fire chiefs "shall hold [their] office[s] continuously during good behavior unless incapacitated by physical or mental disability to perform the duties of [their] positions."  The town has not accepted the provisions of G. L. c. 48, § 58, and so, although Tetreault cites to it in his brief, it does not apply to him.  In fact, that statute shows that the Legislature knew how to craft language granting fire chiefs lifetime appointments, and therefore the omission of similar language from the strong chief statute was not an oversight.

Third, the tenure act, G. L. c. 41, § 127, inserted by St. 1973, c. 170, permits incumbents of most municipal appointive offices, including fire chiefs, to apply for tenure after "at least five consecutive years" of service.  The tenure application is subject to approval by vote of the board of selectmen, and then by the town electorate.  See G. L. c. 41, §§ 129, 131.  Although Tetreault cites to those statutes, they do not apply to him, as he neither served five years nor applied for tenure.  Cf. Williams v. Selectmen of Wellfleet, 421 Mass. 438, 440-441 (1995) (construing G. L. c. 41, § 131, and affirmative vote on town's ballot question to provide tenure to its police officers with more than five years of service).  The

language of those statutes, providing the board and the town voters with a mechanism for granting tenure to most town officers after five years, cuts against reading a lifetime appointment into the strong chief statute.

Fourth, we note that the civil service statute, G. L. c. 31, § 41, inserted by St. 1978, c. 393, § 11, provides that employees who are subject to its protection "shall not be discharged [or] removed" without just cause, notice, and a full hearing.  See, e.g., Brookline v. Alston, 487 Mass. 278, 292 (2021).  That statute defines discharge to include "involuntary separation" from employment.  G. L. c. 31, § 1.  Although Tetreault cites to the civil service statute, as noted above, it does not apply to the town's fire department.  See note 1, supra.  From the language of the civil service statute, it is apparent that the Legislature knew how to broadly define discharge to encompass an involuntary separation from employment, and therefore when it wrote the strong chief statute to require hearings for the narrower category of chiefs "removed for cause," G. L. c. 48, § 42, it did so intentionally.

Finally, an analogous statute applicable to police chiefs sheds light on the Legislature's intent in the strong fire chief statute.  General Laws c. 41, § 21A, inserted by St. 1985, c. 210, provides that a police chief "shall not be removed from such position until a hearing is held by the appointing

authority," and, "[f]or the purpose of this section only[,] failure of reappointment shall be deemed to be a removal." The language of that statute shows that the Legislature understood the difference between removal and failure of reappointment, and it chose to treat police chiefs differently from how it treated fire chiefs in the strong chief statute.

c. Purpose of strong chief statute. In construing the strong chief statute, we also consider its purpose. Tetreault suggests that its purpose was to protect fire chiefs from "political machinations" and to allow them independence in the discharge of their duties. He argues that this purpose would be undermined by our interpretation. We disagree. The removal for cause and due process provisions of the strong chief statute grant fire chiefs significant protection from "political pressure and arbitrary separation" (citation omitted).[7] School

---

[7] To the extent that Tetreault contends that based on the strong chief statute he had a constitutionally protected property interest in his fire chief position, he makes the claim only perfunctorily. This perfunctory treatment does not rise to the level of adequate appellate argument, and we do not "pass upon" the issue. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). We note that because the town did not violate the strong chief statute, no constitutional violation resulted. See Smith v. Commissioner of Mental Retardation, 409 Mass. 545, 549 (1991) ("State statute that merely condition[s] an employee's removal on compliance with certain specified procedures, does not establish a constitutionally protected property interest in the position" [quotation and citation omitted]).

Comm. of Brockton v. Civil Serv. Comm'n, 43 Mass. App. Ct. 486, 488 (1997).

Even if the strong chief statute could be interpreted to provide fire chiefs with lifetime tenure -- a doubtful proposition -- Tetreault waived any such statutory right by entering into the employment contract. When he did so, he knew that the contract had language and terms that conflicted with what he professes was his belief about the meaning of the strong chief statute. As we have said, however, nothing would prohibit a fire chief from entering into an employment contract on terms that differ from the strong chief statute, and G. L. c. 41, § 108O, expressly permits that course of action. Contrast Parker v. EnerNOC, Inc., 484 Mass. 128, 133 (2020) (Wage Act, G. L. c. 149, §§ 148, 148A, & 150, "forbids 'special contracts' between an employer and employee that purport to exempt the employer from the requirements of the act").

3. Town charter and personnel bylaws. For similar reasons, we do not construe the language of the town charter to confer lifetime tenure on Tetreault. Section 5-1(b) of the charter authorized the board to appoint certain officers, including all department heads and the fire chief, for "indefinite terms." We defer to the town's reasonable interpretation of its own charter. See Atkinson, 34 Mass. App. Ct. at 666. The town construed indefinite terms to mean terms

that were not made definite by the charter, rather than as conferring lifetime tenure on the many appointees to whom that section applied. In any event, the town and Tetreault then entered into the employment contract, which permitted either party to decline to renew it upon proper notice. General Laws c. 41, § 108O, provides that a fire chief's employment contract "shall prevail over any conflicting provision of any local personnel by-law, ordinance, rule or regulation."[8]

Nor do we construe the language of either the town charter or the personnel bylaws to preclude the board from declining to renew Tetreault's contract. Section 5-5-1 of the charter provided that in order to "rescind" an appointment, the board must give notice to the appointee of the reasons for removal and the opportunity for a public hearing. Section 62-57(B) of the personnel bylaws provided that employees may not be "discharged" without written notice of the reasons and an opportunity to rebut them. We defer to the town's reasonable interpretations of its charter, see Atkinson, 34 Mass. App. Ct. at 666, and its bylaws, see Styller v. Zoning Bd. of Appeals of Lynnfield, 487 Mass. 588, 600 (2021). Under those interpretations, just as the

---

[8] We do not pause to consider whether the language of the contract also prevails over that of the charter. In a postargument filing, the parties agreed that "whether an employment contract trumps a municipal charter . . . is not an issue in this case."

town did not "remove" Tetreault within the meaning of the strong chief statute, so too it did not "rescind" his appointment within the meaning of the charter or "discharge" him within the meaning of the bylaws.

Conclusion.  The judgment is reversed.  The case is remanded to the Superior Court where a new judgment shall enter declaring that the town did not violate the strong chief statute, the town charter, or the town's personnel bylaws by electing in 2018 not to renew Tetreault's contract.

So ordered.