NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12166

COMMONWEALTH  vs.  AMADI SOSA.


Hampden.     May 5, 2023. - November 30, 2023.

Present:  Budd, C.J., Gaziano, Cypher, Kafker, & Georges, JJ.


Homicide.  Armed Assault with Intent to Rob.  Firearms.  Due
    Process of Law, Accomplice testimony.  Constitutional Law,
    Confrontation of witnesses.  Evidence, Videotape, Joint
    venturer, Intent.  Joint Enterprise.  Intent.  Practice,
    Criminal, Severance, Trial of defendants together, Cross-
    examination by prosecutor, Confrontation of witnesses,
    Instructions to jury, Capital case, New trial, Assistance
    of counsel, Motion to suppress.  Search and Seizure,
    Expectation of privacy.



    Indictments found and returned in the Superior Court
Department on February 11, 2014.

    The cases were tried before Daniel A. Ford, J.; a motion
for a new trial, filed on August 23, 2019, was heard by Douglas
H. Wilkins, J., and a motion for reconsideration was considered
by him.


    John M. Thompson (Linda J. Thompson also present) for the
defendant.
    David L. Sheppard-Brick, Assistant District Attorney, for
the Commonwealth.

2

GEORGES, J.  This is a companion case to Commonwealth v. Leiva, 484 Mass. 766 (2020).  There, we affirmed the convictions of Julio Brian Leiva, who was tried together with the defendant for the shooting death of William Serrano during an attempted robbery.  Id. at 767, 769, 770 n.2.  A Hampden County jury convicted the defendant of murder in the first degree on theories of deliberate premeditation and felony-murder, as well as armed assault with the intent to rob and unlawful possession of ammunition.  Before us are the defendant's consolidated appeals from his convictions and from the denial of his motion for a new trial.

The defendant has asserted numerous errors.  He contends that the trial judge erred by (1) denying the defendant's motion for relief from prejudicial joinder, or otherwise failing to sever his trial from that of his codefendant, Leiva; (2) allowing the prosecutor to use an unauthenticated video recording during the course of trial; (3) denying the defendant's motion for a required finding of not guilty on the charge of murder in the first degree; (4) failing to instruct the jury on an essential element of the charge of unlawful possession of ammunition; and (5) failing to instruct the jury on involuntary manslaughter.  The defendant further contends, with respect to his motion for a new trial, that the motion judge erred both in failing to hold an evidentiary hearing and

in denying the defendant's motion.  Finally, the defendant requests relief pursuant to G. L. c. 278, § 33E.

We discern no reversible error with respect to the defendant's convictions of murder in the first degree and armed assault with the intent to rob.  Additionally, after a thorough review of the record, we decline to exercise our authority under G. L. c. 278, § 33E.  Accordingly, we affirm the defendant's convictions of murder in the first degree and armed assault with the intent to rob.  We also affirm the denial of the defendant's motion for a new trial.  However, because of an error in the jury instructions, the defendant's conviction of unlawful possession of ammunition must be vacated.

1.  Background.  a.  Facts.  We summarize the facts the jury could have found, reserving further discussion of the facts for our analysis infra.

On November 10, 2013, the day of the shooting, the victim joined his girlfriend for dinner at her sister's residence in Springfield.  About twenty minutes after the couple arrived, Leiva joined them, uninvited.  Leiva and the victim's girlfriend had previously dated, ending their relationship about six months prior to the shooting; they remained friendly after their relationship ended.

Leiva stayed in the kitchen for about thirty minutes, eating and sending text messages on his cell phone before

abruptly leaving and returning about fifteen minutes later. After another ten to fifteen minutes had passed, Leiva departed again. He left through the back door of the house onto a small porch where he passed by the victim, who was seated in a chair with the girlfriend on his lap. Leiva, the victim, and the girlfriend were the only people on the porch.

The girlfriend observed the defendant walk down the porch stairs, then around to the right, where he disappeared behind the porch. A few minutes later, Leiva reemerged from behind the porch, followed closely by two men in dark sweatshirts with raised hoods. The girlfriend recognized one of the men as the defendant, a friend of Leiva, whom she had known for over six months and with whom she frequently socialized. As the three men approached the porch steps, the girlfriend could see that Leiva was carrying what appeared to be a shotgun or rifle with a sawed-off barrel.[1] She had previously seen this same gun at the defendant's residence.

Coming onto the porch, Leiva first pointed the barrel of the gun at the girlfriend, who was attempting to block the top of the stairway. The three men pushed past her and surrounded the victim, with Leiva now aiming the gun at the victim's chest. Leiva then instructed the other two men to "run his pockets," at

---

[1] Police never recovered the gun used by Leiva.

which point the two men bent over to reach into the victim's pockets.  Although the girlfriend did not see what, if anything, they retrieved, the victim was in possession of two cell phones earlier that evening, and only one was discovered among the victim's belongings.

When the victim, who was still seated in the chair, pleaded to be left alone, Leiva shot the victim seven times.  The defendant and the other man stood on either side of Leiva, looking on while facing the victim as the shots rang out. Hearing the gunshots, the girlfriend's sister called 911. Several minutes later, a responding officer entered the sister's living room and found the victim, who, while screaming and bleeding, had managed to crawl inside.  The victim was transported to the hospital, where he later died in surgery. After leaving the area, Leiva explained to a friend that he "went to go rob somebody" while he was with two associates but that things went wrong.

b.  Procedural history.  In February 2014, a Hampden County grand jury indicted the defendant for murder in the first degree, G. L. c. 265, § 1; armed assault with intent to murder, G. L. c. 265, § 18 (b); armed robbery, G. L. c. 265, § 17; armed assault with intent to rob, G. L. c. 265, § 18 (b); and unlawful possession of ammunition, G. L. c. 269, § 10 (h).

The defendant's joint trial with his codefendant, Leiva, commenced in January 2016.  Before trial, defendant's counsel filed a motion for relief from prejudicial joinder, seeking to sever the two cases on the grounds that the defenses would be antagonistic.  The trial judge denied this motion.  At the close of the Commonwealth's case, the trial judge allowed the defendant's motion for required findings of not guilty as to the charge of armed assault with intent to murder but otherwise denied the motion with respect to the remaining charges.

The jury acquitted the defendant of armed robbery but found him guilty of murder in the first degree on theories of deliberate premeditation and felony-murder with attempted commission of armed robbery as the predicate felony, guilty of armed assault with the intent to rob, and guilty of unlawful possession of ammunition.

The defendant timely appealed.  While his direct appeal was pending, the defendant filed a motion in this court for a new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  We remanded the defendant's motion to the Superior Court.  After an evidentiary hearing, the motion judge, who was not the trial judge, denied the defendant's motion.  The defendant's motion to reconsider was likewise denied.  Thereafter, the defendant appealed from the denial of his motion for a new trial, which we consolidated with his direct appeal.

c.  The trial.  At trial, the Commonwealth proceeded against the defendant as a joint venturer with Leiva in the armed robbery and murder of the victim.  In support of its theory, the Commonwealth primarily relied upon the girlfriend's testimony concerning the events that evening, including identifying the defendant as one of the other two men involved in the shooting.  See Leiva, 484 Mass. at 769-770.  The girlfriend's timeline of events was corroborated by surveillance footage that was recorded at an apartment building where Leiva would frequently stay while visiting Springfield, which depicted Leiva at various points on the evening of the shooting.[2]  Id. at 768, 770.

Additionally, the Commonwealth's ballistics expert opined that seven shell casings recovered from the crime scene had been fired from the same weapon, as were five bullets recovered from the scene of the shooting and the victim's body.  Id. at 770-771.  The police seized from the defendant's residence live rounds of ammunition of the same caliber and bearing the same manufacturer's markings as the shells recovered from the crime scene.  Id.

The defendant's primary defense was that he had been misidentified.  In support of this theory, counsel for the

_____

[2] The apartment building was approximately a two-minute walk from the sister's residence.

defendant pointed to numerous factors in his closing, including the girlfriend's mistaken identification of the defendant due to her focus on the gun, the darkness of the setting, and the presence of hoods on Leiva's associates, as well as the girlfriend's mistaken identification of another of Leiva's associates.

The defendant himself did not testify; Leiva, however, did -- in narrative form -- which the judge permitted him to do pursuant to Mass. R. Prof. C. 3.3 (e), as appearing at 471 Mass. 1416 (2015) (rule 3.3 [e]).  See Leiva, 484 Mass. at 771-773. The judge also prohibited counsel from referencing the invocation of rule 3.3 (e) and strongly cautioned them against examining Leiva on this topic.  Leiva testified that, while he had visited the sister's residence on the day of the shooting, he left to purchase some marijuana, did not see the defendant, and did not shoot the victim.  Id. at 771.

2.  Discussion.  a.  Standard of review.  "Where we consider, as we do here, a defendant's direct appeal from a conviction of murder in the first degree together with an appeal from the denial of a motion for a new trial, we review the whole case under G. L. c. 278, § 33E."  Commonwealth v. Goitia, 480 Mass. 763, 768 (2018).  "Where the claims are preserved, we review for prejudicial error" (quotation and citation omitted). Commonwealth v. Gamboa, 490 Mass. 294, 299 n.8 (2022).  For

claims that are unpreserved, and for "other errors we discover after a comprehensive review of the entire record, [we review] for a substantial likelihood of a miscarriage of justice." Commonwealth v. Upton, 484 Mass. 155, 160 (2020).

b. Severance of the codefendants' trials. The defendant first argues that severing his trial from the trial of his codefendant, Leiva, was constitutionally required to protect his due process rights and his right to confrontation,[3] and that the trial judge's denial of his motion for relief from prejudicial joinder was otherwise an abuse of discretion. These arguments center on Leiva's testimony pursuant to rule 3.3 (e).

We have previously concluded that "[t]he procedures used to implement rule 3.3 (e) at the . . . trial were proper" and that the trial judge's "rulings relative to the form of [Leiva]'s testimony . . . did not constitute error." Leiva, 484 Mass. at 784-785. Nonetheless, we reexamine the propriety of this procedure and testimony in the context of the nontestifying defendant's severance arguments.[4]

---

[3] Because, as we conclude infra, there was no error, we need not reach the defendant's argument that the alleged errors were structural. See Commonwealth v. Scott, 470 Mass. 320, 337 n.15 (2014).

[4] We decline to hold, as the defendant insists, that rule 3.3 (e) is "designed solely for use in single-defendant trials." Because the defendant cites no legal authority in support of this proposition and presents it in cursory fashion,

i.  Due process.  The defendant asserts that severance was constitutionally required because the Commonwealth knowingly used Leiva's false testimony to secure the defendant's conviction, or allowed for Leiva's false testimony to go uncorrected, thereby violating the defendant's due process rights.  As the defendant did not raise this issue at trial,[5] we review for a substantial likelihood of a miscarriage of justice.  See Commonwealth v. Ware, 482 Mass. 717, 721-722 (2019).  We conclude that there was no error.

It is true that "[t]he Commonwealth may not present testimony at trial which [it] knows or should know is false" (quotation omitted).  Ware, 482 Mass. at 721, quoting Commonwealth v. Forte, 469 Mass. 469, 490 (2014).  "Nor may the Commonwealth, 'although not soliciting false evidence, allow[] it to go uncorrected when it appears.'"  Ware, supra, quoting Commonwealth v. Hurst, 364 Mass. 604, 608 (1974).  A conviction obtained in either scenario "must fall under the Fourteenth Amendment" to the United States Constitution.  Napue v. Illinois, 360 U.S. 264, 269 (1959).  Here, it is clear that the

_____

"we are not obligated to consider it here."  Halstrom v. Dube, 481 Mass. 480, 483 n.8 (2019).

[5] Although the defendant's motion for relief from prejudicial joinder does not appear in the record, there is no indication that defense counsel ever argued, in writing or orally, that the motion should be granted because of Leiva's false testimony.

Commonwealth did not affirmatively present false testimony, given that Leiva was not the Commonwealth's witness, so the question is whether the Commonwealth allowed Leiva's testimony to go uncorrected when it knew or should have known that his testimony was false.

In order to correct testimony that is known to be false, a prosecutor must "take such remedial measures before the jury retire[] as are necessary to ensure that [they are] not deceived." Gomez v. Commissioner of Correction, 336 Conn. 168, 189 (2020). Although the precise remedial measures employed may vary depending on the circumstances of a case, one such means of correcting false testimony is, of course, cross-examination. See Leiva, 484 Mass. at 784 n.19 ("Our system[] . . . hedges against the risk that judgment will be rendered on false premises by providing for rigorous cross-examination . . ."). See also Hoffa v. United States, 385 U.S. 293, 311 (1966) ("The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury").

Here, the prosecutor challenged the veracity of much of Leiva's narrative testimony by conducting a vigorous and thorough cross-examination. For example, the prosecutor showed surveillance footage, depicting an individual running shortly

after the murder.  Although Leiva disputed that he was this individual, he conceded -- in response to the prosecutor's questions -- that he is depicted in the footage at times before and after the running individual can be seen.  The implication was clear:  the prosecutor sought for the jury to infer, contrary to Leiva's testimony, that the running individual was in fact Leiva.  Indeed, the prosecutor explicitly stated during closing arguments that the jury "would have every right to draw the inference" that this individual was Leiva.

With the prosecutor having rigorously cross-examined Leiva, it was for the jury to determine whether he was telling the truth.  See Forte, 469 Mass. at 490.  Indeed, there can be no doubt that the jury were not deceived by Leiva; in order to convict him, the jury needed to reject Leiva's version of events.

Nonetheless, the defendant points out that the prosecutor asked Leiva on cross-examination whether he was trying "to help [his] friend Amadi out," and further asked Leiva why he decided to testify.  By doing so, the defendant argues, the prosecutor was insinuating that Leiva was "Sosa's witness."  As improper as these questions may have been, the defendant's theory has a fatal flaw:  Leiva never answered, as the trial judge sustained objections to these questions before Leiva could do so.  The jury had been previously instructed that, if an objection was

sustained, they were to disregard the question and not speculate as to what the answer might have been. See Commonwealth v. Andrade, 488 Mass. 522, 535 (2021) ("Jurors are presumed to follow the instructions given"). Accordingly, because the prosecutor did not knowingly use, or knowingly fail to correct, false testimony from Leiva, the defendant's due process rights were not violated.[6]

ii. Right to confrontation. The defendant next claims that severance was required because he was deprived of a constitutional right to cross-examine Leiva on a "critical issue of bias": that Leiva was testifying falsely pursuant to rule 3.3 (e). We review for abuse of discretion and conclude that the trial judge did not abuse his discretion by restricting cross-examination of Leiva's invocation of rule 3.3 (e). See Commonwealth v. Miles, 420 Mass. 67, 71-72 (1995).

"Both the Sixth Amendment [to the United States Constitution] and art. 12 [of the Massachusetts Declaration of Rights] guarantee a criminal defendant's right to confront the

---

[6] We also reject the defendant's claim that the trial judge misled the jury by placing Leiva under oath, as if to suggest that Leiva's testimony was true. Swearing or affirming one's duty to testify truthfully is a prerequisite to testifying. See Commonwealth v. Stewart, 454 Mass. 527, 531 (2009). If placing a witness under oath could somehow be construed as an endorsement of the veracity of his or her testimony, it would be impossible for the jury to ever engage in their role of determining witness credibility. See Commonwealth v. Casey (No. 1), 442 Mass. 1, 8 (2004).

witnesses against him through cross-examination."  Miles, 420 Mass. at 71.  "In determining whether a defendant's constitutional right to cross-examine and thus to confront a witness against him has been denied because of an unreasonable limitation of cross-examination, we weigh the materiality of the witness's direct testimony and the degree of the restriction on cross-examination."  Id. at 72, citing Commonwealth v. Kirouac, 405 Mass. 557, 561 (1989).

While criminal defendants have a right to cross-examine prosecution witnesses concerning their bias, a judge may properly foreclose such examination where the theory of bias is "too tenuous" or "too speculative."  Commonwealth v. Bui, 419 Mass. 392, 401-402, cert. denied, 516 U.S. 861 (1995).  Here, the connection between the invocation of rule 3.3 (e) and any conceivable bias on Leiva's part is simply too tenuous.  The defendant does not adequately explain how the invocation of rule 3.3 (e) would motivate Leiva to testify falsely.  At best, he seems to vaguely suggest that preventing cross-examination on this topic would somehow incentivize Leiva to perjure himself because the falsity of his testimony would be shielded from disclosure.  But the judge did not prevent counsel from attacking the actual substance of Leiva's testimony; indeed, as we explained supra, the prosecutor did so to great effect.

Moreover, we do not accept the notion that Leiva would have been encouraged to perjure himself through the invocation of rule 3.3 (e), particularly where the record demonstrates that Leiva's attorney confirmed at sidebar that he had advised Leiva in accordance with the rule. The advice required of counsel under rule 3.3 (e) is designed to dissuade false testimony, not encourage it. See Mass. R. Prof. C. 3.3 (e) ("In a criminal case, defense counsel . . . has a duty strongly to discourage the client from testifying falsely, advising that such a course is unlawful, will have substantial adverse consequences, and should not be followed"). Given the attenuation between rule 3.3 (e) and Leiva's motive for testifying, the judge did not abuse his discretion.

iii. Prejudicial joinder. The defendant's final argument concerning severance is that the judge abused his discretion in denying the defendant's motion for relief from prejudicial joinder. "Absent a constitutional requirement for severance, joinder and severance are matters committed to the sound discretion of the trial judge." Commonwealth v. McAfee, 430 Mass. 483, 485 (1999). Accordingly, we review the judge's denial of the motion for relief from prejudicial joinder for abuse of discretion. See Commonwealth v. Akara, 465 Mass. 245, 256 (2013). We conclude there was no error.

"A judge should sever trials if a defendant meets the burden of proving that (1) the defenses are 'antagonistic to the point of being mutually exclusive,' or (2) 'the prejudice resulting from a joint trial is so compelling that it prevents a defendant from obtaining a fair trial'" (citations omitted). Commonwealth v. Siny Van Tran, 460 Mass. 535, 542 (2011). Regarding the first basis, "defenses are mutually antagonistic and irreconcilable where the 'sole defense of each [is] the guilt of the other.'" Id., quoting Commonwealth v. Stewart, 450 Mass. 25, 31 (2007). It is not enough to require severance simply because the defendants "assert inconsistent trial strategies," Siny Van Tran, supra, or because "a defendant would stand a better chance of acquittal if tried alone." Commonwealth v. DePina, 476 Mass. 614, 629 (2017).

Here, the defenses of Leiva and the defendant were not mutually antagonistic. Indeed, we previously noted that the defendant and Leiva "advanced entirely consistent trial defenses." Leiva, 484 Mass. at 793 n.35. The defendant asserted he was misidentified as one of the participants, and Leiva similarly denied that he shot the victim. Under the facts of this case, the jury were free to conclude both that the defendant was misidentified and that Leiva did not shoot the victim. See Commonwealth v. Watson, 487 Mass. 156, 168-169 (2021) (defenses not so mutually antagonistic requiring

severance where codefendants argued misidentification and lack of involvement).  Thus, "as the jury could have accepted either codefendant's argument while at the same time acquitting the other," the defenses presented were not mutually antagonistic. Commonwealth v. Fan, 490 Mass. 433, 440 (2022).

Likewise, Leiva's testimony, which in no way implicated the defendant, did not prevent the defendant from receiving a fair trial.  Rather than pointing the finger at the defendant, Leiva testified that he had not seen the defendant on the day of the murder, and he denied having referred to the defendant in connection with the shooting.  Among his scant testimony that even related to the defendant, Leiva acknowledged that he had initially asked a friend to pick him up at the defendant's address on the night of the shooting, before changing his request to a different address.  But this same information had already been introduced in evidence independently through the friend's testimony, as well as through a printout of text messages exchanged between Leiva and the friend.  Thus, Leiva's testimony on this point "was at best cumulative" of other evidence in the record.  Commonwealth v. Vasquez, 462 Mass. 827, 837 (2012).  Accordingly, the judge did not abuse his discretion in denying the defendant's motion.

c.  Use of compilation video recording.  A Springfield police officer testified at trial that, shortly after the night

of the shooting, he extracted surveillance footage from a digital video recorder that was provided by the property management office at the apartment building where Leiva went on the night of the shooting.  The complete video footage contained several camera angles of the property, spanning multiple hours around the time of the shooting.  From this longer, multiple-hour video footage, a condensed video recording (compilation video) was created, culled to what was relevant to the shooting. The defendant argues that the trial judge erred in allowing the prosecutor to use this compilation video because it was never authenticated, marked for identification, or admitted in evidence.[7]  In response, the Commonwealth emphasizes that the complete footage, from which the compilation was derived, was admitted in evidence.

As defendant's counsel objected to the use of the compilation video, "we review to determine whether the judge abused [his] discretion and, if so, whether the error resulted in prejudice to the defendant" (quotation and citation omitted). Commonwealth v. Davis, 487 Mass. 448, 465 (2021), S.C., 491 Mass. 1011 (2023).  "An error is not prejudicial if it did not influence the jury, or had but very slight effect" (quotation

---

[7] The prosecutor used the compilation video at several points during his cross-examination of Leiva.  The prosecutor also showed various clips from the compilation video to the jury during closing arguments.

and citation omitted).  Commonwealth v. Irene, 462 Mass. 600, 618, cert. denied, 568 U.S. 968 (2012).  We conclude that, assuming error, the defendant was not prejudiced by the prosecutor's use of the compilation video.

The defendant does not argue that the complete footage itself was erroneously admitted, where testimony was offered to authenticate that footage.  In particular, an officer described at trial how the complete surveillance footage was transported and copied.  Additionally, an employee from the property management office testified as to how this footage was provided to the police, and offered various details concerning the cameras that recorded this footage.

Further, it is undisputed that the compilation video was a subset of this longer surveillance footage that had already been admitted in evidence.  There is no indication that, for example, the visuals contained within the compilation video were somehow digitally altered to depict events  that were different from those depicted in the complete footage.  We have reviewed the compilation video and compared it to the corresponding times from the original surveillance footage.  Based upon our review, we conclude that the sequencing of certain events from the longer video footage into the compilation video "added little to the Commonwealth's case and detracted little from the

defendant's theory at trial." Commonwealth v. Wood, 90 Mass. App. Ct. 271, 282 (2016).

Therefore, under these circumstances, we are convinced that the defendant suffered no prejudice. See Commonwealth v. Kozubal, 488 Mass. 575, 588 (2021), cert. denied, 142 S. Ct. 2723 (2022) (even if admission of isolated text messages between defendant and victim was error, defendant was not prejudiced, "given the cumulative nature of the evidence, including the admission of the many text messages between the defendant and the victim that the defendant does not contest").

Finally, we note that while the defendant suffered no prejudice here, the better practice is to authenticate excerpts that have been copied from an exhibit, even when the complete exhibit itself has already been authenticated and admitted in evidence, to ensure that those excerpts are accurate copies. See Commonwealth v. Leneski, 66 Mass. App. Ct. 291, 294 (2006) ("properly authenticated" copy of videotape is admissible if otherwise relevant). Additionally, although the Commonwealth did not do so here, parties should explore the viability of admitting excerpts of voluminous video recordings pursuant to Mass. G. Evid. § 1006 (2023), particularly where a jury may find it "difficult to master the technology necessary to find and view the relevant parts of the [complete] videos in the jury room." Commonwealth v. Suarez, 95 Mass. App. Ct. 562, 571-572

(2019) (no abuse of discretion in admitting compilation of surveillance videos pursuant to Mass. G. Evid. § 1006).

d. Deliberate premeditation. The defendant also contends that the trial judge erred in denying his motion for a required finding of not guilty on the charge of murder in the first degree based upon the theory of deliberate premeditation. He claims the evidence was insufficient for the jury to find that he intended to kill the victim, reasoning that because Leiva's intent to kill is not attributable to the defendant, the evidence at best supported an inference that the defendant intended to rob or intimidate the victim. Additionally, the defendant maintains that the evidence was insufficient to establish deliberate premeditation, reasoning that, since "the abrupt shooting" was a "surprise" to him, the defendant's intent was not "the product of cool reflection." See Commonwealth v. Colas, 486 Mass. 831, 836 (2021), quoting Commonwealth v. Tavares, 471 Mass. 430, 435 (2015). Although we acknowledge that the issue is close, we conclude that the trial judge did not err.

In reviewing the denial of such a motion, we ask whether "the Commonwealth's evidence, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, is sufficient to persuade a rational jury of the defendant's guilt beyond a reasonable doubt" (quotation and

citation omitted). Commonwealth v. Gibson, 488 Mass. 854, 857 (2022). "The relevant question is whether the evidence would permit a jury to find guilt, not whether the evidence requires such a finding." Commonwealth v. Brown, 401 Mass. 745, 747 (1988).

For the defendant to be convicted on a theory of deliberate premeditation, the Commonwealth had to prove that he "had or shared an intent to kill or cause death" (quotation and citation omitted). Tavares, 471 Mass. at 435. Additionally, the Commonwealth had to prove that the decision to kill "was the product of cool reflection" (citation omitted). Colas, 486 Mass. at 836. "Circumstantial evidence alone may be sufficient to prove deliberate premeditation." Commonwealth v. Salazar, 481 Mass. 105, 111 (2018). "No particular period of reflection is required for deliberate premeditation to be found." Commonwealth v. Chipman, 418 Mass. 262, 269 (1994). "Thus, if there was evidence presented from which the jury could infer that the defendant intended to kill [the victim], and the decision was the result of some period of reflection, however short, then the defendant's motion . . . was properly denied." Tavares, supra.

Here, when viewed in the light most favorable to the Commonwealth, there was sufficient evidence from which the jury could infer that the defendant shared Leiva's intent to kill the

victim, and that this shared intent was the product of a period of reflection. Although Leiva's intent is not imputed to the defendant, "[t]he jury may infer the requisite mental state [for a joint venturer] from [his] knowledge of the circumstances and subsequent participation in the offense" (citation omitted). Commonwealth v. Freeman, 442 Mass. 779, 782-783 (2004), S.C., 451 Mass. 1006 (2008). Thus, the defendant's intent can be "inferred from evidence that [the] defendant (a) observed [Leiva] demonstrate or express lethal intent (e.g., by producing a gun) and (b) thereafter took some step to help carry out that intent." Commonwealth v. Gonzalez, 475 Mass. 396, 416-417 (2016).

As defense counsel conceded at oral argument before this court, there was sufficient evidence that the defendant knew that Leiva possessed a gun. Indeed, the defendant had ample opportunity to observe the gun, given that the defendant was standing next to Leiva, the encounter took several minutes, and Leiva pointed the gun at the girlfriend before aiming it at the victim. See Commonwealth v. Norris, 462 Mass. 131, 140 (2012). Although the Commonwealth was not obligated to prove that the defendant knew Leiva was armed, the defendant's knowledge is probative as to his intent. See Commonwealth v. Rosa, 468 Mass. 231, 245 (2014) (proof of defendant's knowledge that coventurer is armed is not required).

Additionally, there was sufficient evidence for the jury to conclude that the defendant supplied both the gun and the ammunition, including (1) the girlfriend's testimony that she had previously seen the murder weapon at the defendant's residence and that the defendant was friends with Leiva; (2) the girlfriend's testimony that she witnessed Leiva disappear behind the porch and re-emerge with the defendant while holding a gun; and (3) expert testimony that the caliber and manufacturer markings of the ammunition found in the defendant's basement matched the caliber of the bullets recovered from the victim's body and the markings on the casings found at the crime scene. See Commonwealth v. Beliard, 443 Mass. 79, 81-82, 86 (2004). See also Gonzalez, 475 Mass. at 416 ("knowledge and intent [may be] inferred . . . when a defendant brings a gun to the scene of the killing, but does not [himself] fire the fatal shot").

We also look to the defendant's conduct at the time of the shooting to infer intent. See Freeman, 442 Mass. at 782-783. First, the defendant complied with Leiva's instruction to "run" the victim's pockets.[8]  Second, as Leiva shot the victim seven

---

[8] To be sure, an intent to rob cannot be conflated with an intent to kill.  See Commonwealth v. Mandile, 403 Mass. 93, 100 n.11 (1988).  However, conduct that could support an inference that a defendant intended to rob a victim may, under the right circumstances, also support an inference that a defendant intended to kill a victim.  See, e.g., Freeman, 442 Mass. at 783.  Here, even if this conduct is more probative as to the defendant's intent to rob the victim, it nonetheless has some

times, the defendant stood by Leiva's side facing the victim. While mere presence at a crime scene is not sufficient to establish intent, when viewing the evidence in the light most favorable to the Commonwealth, the jury did not have to infer that the defendant's intent was merely to rob or intimidate the victim as he suggests. See Gonzalez, 475 Mass. at 414. To the contrary, the evidence at trial demonstrated that the three men were positioned in such a way as to effectively block the victim from the kitchen door and the porch stairs -- his only two means of escape. In other words, the victim was "[t]rapped in his chair" on the small porch, while the three men stood over him. Leiva, 484 Mass. at 767. Thus, the jury could have reasonably inferred that the defendant flanked Leiva, towering over the victim with the intent of making the crime succeed. See Commonwealth v. Bonner, 489 Mass. 268, 279 (2022) (defendant standing next to shooter, who continued to aim gun at victim after shooting, was probative as to defendant's shared intent to kill victim); Watson, 487 Mass. at 163 (reasonable for jury to infer defendant's role was to block street so others could not interfere while coventurer shot victim). That is, a rational jury could reasonably infer that the defendant helped block the

_____

weight as to the defendant's intent to kill the victim, particularly given that the defendant knew that Leiva was armed.

victim from escaping to ensure that Leiva could accomplish his goal:  shooting and killing the victim.

While the inference that the defendant intended to block the victim from escaping is not itself inescapable, "reasonable inferences . . . need not be necessary or inescapable, only reasonable and possible" (quotations and citation omitted). Commonwealth v. Schoener, 491 Mass. 706, 714 (2023).  Moreover, "[t]he line that separates mere knowledge of unlawful conduct and participation in it, is 'often vague and uncertain.  It is within the province of the jury to determine from the evidence whether a particular defendant [has] crossed that line.'" Norris, 462 Mass. at 140, quoting Commonwealth v. Longo, 402 Mass. 482, 487 (1988).  Therefore, there was sufficient evidence for a rational jury to conclude that the defendant intended to kill the victim.

There was likewise sufficient evidence for a rational jury to conclude that the defendant's intent was a product of deliberate premeditation.  Given the abrupt comings and goings of Leiva over the course of the evening, and the defendant's sudden appearance from behind the porch alongside Leiva, who was at that point wielding a firearm, a jury could reasonably infer that the defendant was "lying in wait" with the murder weapon until the right time to provide the weapon to Leiva and join him in a confrontation with the victim.  Tavares, 471 Mass. at 435-

436. See Commonwealth v. Robinson, 482 Mass. 741, 746 (2019) ("Deliberate premeditation can be inferred from the bringing of a firearm to the scene of the killing . . ."). 

Further, there is no evidence that the defendant was "surprise[d]," as he claims; rather, the evidence was that he freely stood by Leiva's side as the victim was shot seven times. Accordingly, "[t]his case . . . does not suggest plain spontaneity or tainted premeditation." Commonwealth v. Rivera, 482 Mass. 259, 272 (2019). In short, while any one fact in this case would have been insufficient on its own, "the entirety of the facts presented 'form[ed] a fabric of proof that was sufficient to warrant the jury's finding beyond a reasonable doubt that the defendant' was guilty of murder in the first degree on a theory of deliberate premeditation as a joint venturer." Commonwealth v. Javier, 481 Mass. 268, 285 (2019), quoting Commonwealth v. Rojas, 388 Mass. 626, 630 (1983).

e. Felony-murder. The defendant also argues that there was insufficient evidence to support his conviction of felony-murder in the first degree with the attempted commission of armed robbery as the predicate felony. Although not clearly articulated in the defendant's briefing, the defendant's argument appears to suggest that the trial judge was required to instruct the jury that they had to find, as an essential "factual" element of felony-murder, that the maximum sentence

for the predicate felony -- armed robbery -- is "punishable by a maximum sentence of life imprisonment."  Because the jury were not so instructed and no "evidence" of this "fact" was presented, the defendant contends, his conviction of felony-murder "is invalid."

We disagree.  The penalty for armed robbery, as with other criminal offenses, is set by statute; thus, the maximum sentence allowable for armed robbery is a matter of statutory interpretation -- "a pure question of law."  Commonwealth v. Cintolo, 415 Mass. 358, 359 (1993).  Accordingly, this question is "for the judge, not the jury."  Commonwealth v. Trotto, 487 Mass. 708, 735 (2021).  Here, as the defendant concedes, the trial judge correctly instructed the jury that armed robbery is, as a matter of law, a felony with a maximum sentence of life imprisonment.  See G. L. c. 265, § 17.  Accordingly, the defendant's argument fails.

f.  Unlawful possession of ammunition.  In his brief, the defendant argues, with respect to his conviction of unlawful possession of ammunition under G. L. c. 269, § 10 (h), that there was insufficient evidence that he knew that Leiva's firearm was loaded.[9]  Subsequently, in light of the United States

_____

[9] The Commonwealth proceeded on a theory that the defendant constructively possessed the ammunition found at the crime scene; he was not charged in connection with the ammunition seized from his residence.

Supreme Court's holding in New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111, 2122 (2022), that the Second Amendment to the United States Constitution protects an individual's right to carry a firearm outside the home, this court concluded that "licensure is . . . an essential element of the crime of unlawful possession of ammunition under G. L. c. 269, § 10 (h)." Commonwealth v. Guardado, 491 Mass. 666, 692 (2023) (Guardado I), vacated in part, 493 Mass. 1, 12 (2023) (Guardado II). The defendant thereafter filed a supplemental brief in which he argues that our holding in Guardado I necessitates that his unlawful possession conviction be vacated and remanded for entry of a judgment of acquittal.

We agree that the defendant's conviction must be vacated. It is a violation of a defendant's Second Amendment and due process rights "when he [i]s convicted of unlawfully possessing ammunition although the jury were not instructed that licensure is an essential element of the crime." Guardado I, 491 Mass. at 693. "[T]he Commonwealth carries the burden of proving each element of a charged crime." Id. at 682. Here, the jury were not instructed that the Commonwealth had the burden of proving the defendant's lack of licensure as an element of the crime. Thus, the defendant's unlawful possession conviction must be vacated.

However, we disagree with the defendant's proposal to remand for entry of a judgment of acquittal. The proper remedy under these circumstances is to remand for a new trial. See Guardado II, 493 Mass. at 6-7, 12. Accordingly, the Commonwealth shall have an opportunity to prove that the defendant unlawfully possessed ammunition. Id. at 2-3, 12.

g. Manslaughter instruction. The defendant next argues that the judge erred in denying his request for an involuntary manslaughter instruction. The defendant reasons that the jury could have found that the defendant acted "wanton[ly]" or "reckless[ly]" in accompanying Leiva to merely frighten or intimidate the victim, rather than to kill or rob him. As the defendant requested an involuntary manslaughter instruction at trial, we review for prejudicial error. See Commonwealth v. Pina, 481 Mass. 413, 422 (2019). We conclude that, even assuming that the judge erred, there was no prejudice.

Ordinarily, in the case of felony-murder, "the defendant is not entitled to an instruction on manslaughter" (citation omitted). Commonwealth v. Carter, 475 Mass. 512, 523 (2016). Nonetheless, "[a]n instruction on involuntary manslaughter is appropriate in a felony-murder case . . . if there is evidence that the defendant was merely engaged in wanton [or] reckless conduct . . . ." Commonwealth v. Donovan, 422 Mass. 349, 353 (1996). Here, while the jury were not instructed on involuntary

manslaughter, the trial judge did instruct the jury on murder in the second degree, based on theories of both malice and felony-murder. Because the jury found the defendant guilty of murder in the first degree based on both theories, the judge's instruction on murder in the second degree precludes any conclusion of prejudice. See Commonwealth v. Chase, 433 Mass. 293, 300 (2001) ("This is not a case where the failure to instruct on a lesser included offense left the jury with no alternative between a murder conviction and an acquittal"). See also Donovan, supra at 354 ("If the jury believed that the defendant shared some lesser intent than that required for [the underlying felony for felony-murder in the first degree], they had the option of returning a verdict of murder in the second degree. They did not").

h. Motion for a new trial. i. Ineffective assistance of counsel. In his motion for a new trial, the defendant asserted that his trial counsel was ineffective because he failed to timely file a motion to suppress the ballistics evidence seized from the basement of the apartment building where the defendant resided. The defendant maintained that the search warrant affidavit of Springfield police Detective Timothy Kenney failed to establish probable cause to search the basement for firearms, ammunition, and related evidence. In denying the defendant's

motion for a new trial, the motion judge concluded that there was probable cause to search the basement common area.

On appeal, the defendant reiterates his argument that there was no probable cause to search the basement for ammunition or firearms, and therefore, the motion judge erred in concluding otherwise. The Commonwealth counters that the defendant lacked a reasonable expectation of privacy in the basement, and therefore no search occurred in the constitutional sense. The defendant asserts that the Commonwealth's argument must be disregarded because the record is incomplete as to whether the basement is a common area. The defendant's argument misses the mark.

Where, as here, a defendant's motion for a new trial based on ineffective assistance of counsel has been denied and we are reviewing it alongside his direct appeal pursuant to G. L. c. 278, § 33E, our task is to determine whether counsel erred and, if he did, whether that error "was likely to have influenced the jury's conclusion" (citation omitted). Commonwealth v. Montez, 450 Mass. 736, 754 (2008). More specifically, "the defendant must show that the motion to suppress would have been successful, and that failing to bring such a motion . . . created a substantial likelihood of a miscarriage of justice." Commonwealth v. Banville, 457 Mass. 530, 534 (2010).

Here, the evidence presented in connection with the defendant's motion for a new trial implicates, at minimum, a likelihood that the basement is a common area.[10]  The basement was part of a three-family residence.  In general, occupants of a multiunit residence lack a reasonable expectation of privacy in its common areas.  See, e.g., Commonwealth v. Montanez, 410 Mass. 290, 302 (1991).  That said, the question whether such an occupant has a reasonable expectation of privacy in a purportedly common area "cannot be answered categorically." Commonwealth v. Dora, 57 Mass. App. Ct. 141, 144-145 (2003).  If that question were to be answered in the negative, then "the police [were] free to search [the basement] without a warrant and without probable cause."  Commonwealth v. Porter P., 456 Mass. 254, 259 (2010).

However, we need not answer that question.  It is true that some details regarding the basement are unclear.[11]  But this is

----

[10] For example, at an evidentiary hearing on the defendant's motion for a new trial, Detective Kenney testified that the basement could be accessed through a staircase that connects to each apartment.  Additionally, there were no clearly marked areas in the basement that could be used to attribute ownership to particular individuals.  However, Detective Kenney could not recall whether the basement had a door or whether he forced entry to gain access to the basement.

[11] For example, it is unclear whether, assuming that the basement had a door, it was locked at the time of the search. It is likewise unclear who actually used the basement and whether any residents were excluded from using the basement.  We express no opinion as to the precise facts that would have been

precisely why a motion to suppress would have failed -- because it is the defendant's burden to demonstrate that he had a reasonable expectation of privacy in the basement and its contents at the time of the search, rather than the Commonwealth's burden to show that he had no reasonable expectation of privacy. See Commonwealth v. Netto, 438 Mass. 686, 697 (2003). Therefore, "if the record is unclear," the defendant has failed to meet his burden. Id. In this context, the defendant's burden on his motion for a new trial is the same as the burden he would have had if his trial counsel had filed a motion to suppress; that is, in order to meet his burden of demonstrating that a motion to suppress would have been successful for purposes of his motion for a new trial, the defendant was obligated to present sufficient evidence that demonstrated he had a reasonable expectation of privacy in the basement. See Commonwealth v. Druce, 453 Mass. 686, 703 (2009) ("A defendant who seeks a new trial based on ineffective assistance of counsel bears the burden of proving the ineffectiveness").

Here, nothing that the defendant submitted in support of his motion for a new trial resolves whether he had a reasonable expectation of privacy in the basement. Without even, for

---

required for the defendant to demonstrate a reasonable expectation of privacy in this case.

example, a signed affidavit from the defendant providing additional details concerning the basement, the defendant did not satisfy his threshold burden of demonstrating that a search in the constitutional sense had occurred at all.  See Commonwealth v. D'Onofrio, 396 Mass. 711, 714 (1986).

While the motion judge did not address whether the defendant had a reasonable expectation of privacy, "[a]n appellate court is free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings."  Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997).  The record clearly supports the conclusion that the defendant did not meet his threshold burden of demonstrating that he had a reasonable expectation of privacy in the basement. Accordingly, the motion judge did not err in denying the defendant's motion for a new trial.

ii.  Evidentiary hearing.  The defendant also argues, with respect to his motion for a new trial, that the motion judge erred in failing to hold an evidentiary hearing.  However, the motion judge did hold an evidentiary hearing.  After this evidentiary hearing, the defendant did not request another hearing in his motion for reconsideration.  Thus, the motion judge concluded that another hearing was unnecessary and adopted the defendant's version of the facts.

Where the trial court had already conducted an evidentiary hearing, and where the defendant made no request for another, it would have been "fair to conclude that the defendant was proceeding on the facts from the existing . . . record." Commonwealth v. Pimental, 54 Mass. App. Ct. 325, 333 (2002). In any event, the motion judge properly exercised his discretion in determining that another hearing was unwarranted, as he could have reasonably concluded that the briefing and documents before him "were sufficient to allow him to reach an informed decision." Commonwealth v. Barry, 481 Mass. 388, 401 (2019).

i. Review under G. L. c. 278, § 33E. Finally, we have reviewed the entire record and discern no basis upon which to exercise our extraordinary authority under G. L. c. 278, § 33E.[12]

3. Conclusion. For the reasons stated, the defendant's convictions of murder in the first degree and armed assault with intent to rob are affirmed. The trial court's orders denying the defendant's motion for a new trial and the defendant's motion for reconsideration of the same are likewise affirmed.

---

[12] To the extent we do not discuss other arguments made by the defendant (including arguments on duplicative convictions, an alleged error in the jury instruction on felony-murder in the second degree, alleged ambiguities between the attempted commission of armed robbery and the commission of armed assault with intent to rob, the alleged irrelevance of certain photographic evidence, and omissions from Detective Kenney's search warrant affidavit), they "have not been overlooked. We find nothing in them that requires discussion." See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

We vacate and set aside the conviction of unlawful possession of ammunition and remand to the Superior Court for a new trial on the unlawful possession indictment.

<u>So ordered</u>.